The next matter, number 24-1411, David Boniface et al. v. Gene Morose Viliena. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin. Good morning, Your Honor. My name is Peter Haley. I represent the appellant, Gene Viliena. With permission of the Court, I'd like to reserve two minutes of my time for the purposes of rebuttal. You may. Thank you, Your Honor. May it please the Court, the primary issue in this appeal is one of subject matter jurisdiction. The limitation of jurisdiction by a court is an exercise in humility. There are innumerable issues that a court or Congress may choose to address. The world is a dangerous and violent place. As the appellant argues this morning, there are conflicts in the Sudan, Palestine, Israel, Ukraine, and numerous other places around the world. Violence is endemic to modern civilization. The World Health Organization reports that there are 52 murders per hour worldwide, or some $458,000 per year. In reviewing the matters that come before it and exercising federal question jurisdiction under Section 1331, the Court is guided by the Supreme Court's decision in Merrill Pharmaceuticals v. Thompson, a 1986 decision, in which when reviewing the exercise of federal question jurisdiction, the Court noted that such a review requires sensitive judgments about Congressional... Counsel, as I understand it, and, you know, the term jurisdiction means a lot of different things, I think your essential argument is that no cause of action can be recognized on the facts here under the TVPA because there is no connection with the United States. Is that essentially it? And there are a number of subsidiary arguments under that. I believe that that's correct, Your Honor, that the argument that the appellant makes is that the authority of Congress to legislate is bound by Section 8 of Article 1, and it derives its power under its right to punish felonies and offenses against the law of nations, and that the law of nations itself incorporates a jurisdictional norm, which is that the things that concern another country are those that involve its own citizens, actions occurring on its own soil, or matters which implicate a distinct American interest. So in this case, in ruling on the motion to dismiss the Alien Torch Statute claims, the district court below said these claims, as alleged in the complaint, do not touch or concern the United States. And the courts which have authorized jurisdiction in cases like this, so this is a case where all of the parties are citizens of a foreign country, the acts took place within a foreign country, and as the district court observed, there's no connection to the United States. The courts that have found jurisdiction before the 11th and the 2nd Circuit have done so with a race ipsa analysis. This is a federal statute. We have jurisdiction over federal statutes. We can exercise jurisdiction. But as this court itself has held in United States v. Smith, the 1982 decision authored by Judge Torella, then sitting by designation, even where there is jurisdiction, the court must take into account the constitutional norms and the norms of international law. When the TVPA was passed, the original bill was restricted, introduced by Senator Specter, was limited to acts which took place within the United States. In the course of the modifications to the legislation, the Congress heard from both the Department of State and the Justice Department that there were four concerns. The Justice Department actually took the position, which I've researched and it appears to be correct, that if the act were extended to cover the claims here which have no substantial connection to the U.S., that would not be in keeping with the Convention Against Torture, which only requires signatory states, and Haiti, by the way, is a signatory state, to create a cause of action for incidents within their own country, and that the convention considered but rejected the idea that you could create a cause of action for actions that took place entirely in another country. The Department of Justice also took the position that this was not in accord with the law of nations, and as a result of that, they said, and therefore there are constitutional concerns raised as to whether this goes beyond the authority of Congress under either the law of nations clause or the define and punish clause. The define and punish clause does not extend to extrajudicial killings or torture, and then, as in Kayhabel, there were concerns raised if the U.S. does this, then I think the legislative history refers to, I suppose, Saddam Hussein arrested an American policeman who happened to be traveling in Iraq for the actions he took in his job as a policeman in New York City. So all of that is a background, but there is another issue here, even if you put that aside. Can we talk about your argument that the act, the text of the act itself simply does not extend to attempted extrajudicial killings? There are three aspects in which the district court entered the judgment and issued jury instructions that don't appear in the text of the act. One, as your Honor has noted, the absence of attempted extrajudicial killings. The other being the concept of aiding and abetting. In a 2010 decision, Mastappa v. Chevron, Judge Rakoff sitting in the Southern District of New York dismissed claims under the TVPA because he noted that there's nothing in the TVPA that allows the entry of judgment for aiding and abetting. Aiding and abetting torture? Well, the court's jury instructions appear at pages 864 and 865 of the record and are quoted at page 22 of the evidence main brief. And it said, if you find that there are wrongful acts, you can also find the defendant liable if he aided and assisted others in the commission of those wrongful acts. That's not something that's within the statute. That's not something that's within the statute. And the third point, there's also the entry of judgment here for punitive damages, which also are not provided for in the act itself. Can we just go back, though, to your first point on the attempted extrajudicial killing? Even if you're right that the TVPA does not provide a remedy for attempted extrajudicial killing, the plaintiffs responded that we could still uphold the single damages award for torture and attempted extrajudicial killing here because the same conduct underlies both claims. I didn't see that you replied to that argument in your reply, but would you be able to address it? Certainly, Your Honor. The argument is that the attempted judicial killing itself constitutes torture, but that's not the way the matter is presented to the jury in this case, finding that he can be liable for attempted judicial killing. So the distinction is whether or not, in this instance, the fact supported that the attempted judicial killing equates to torture. But I recognize the argument there. But I do believe, as we've argued, that in this case, primarily with respect to the issue of aiding and abetting and the instructions on aiding and abetting and assistance, that the court exceeded the bounds of the statute itself. And certainly with respect to punitive damages. With respect to the jurisdictional issue, Judge Lynch made reference to the Supreme Court's 2013 decision in Kiobel. And in that case, involving claims by Nigerian nationals against other entities outside the United States for actions which took place outside the United States. Justice Breyer concurred in the judgment of the court dismissing those claims, but wrote separately because he disagreed with the analysis. And in that instance, the issue was the court's majority opinion focused on whether or not the alien port statute evinced an extraterritorial scope. And the majority found that it did not. And instead, in his opinion, writes that the issue is one of whether or not the exercise of jurisdiction is commitment with the international norms of jurisdiction. Finding that jurisdiction was well-founded in one of three circumstances. The defendant was an American citizen. The act took place on American soil, or the act substantially and adversely affected an important American interest. Concluding that there must be a distinct American interest in order for the court to exercise that jurisdiction. In that opinion, and the Supreme Court also in Sosa, frequently quotes from Justice Story's 19th century observation in a decision that no claim was made. And that is that no country has ever pretended to be the moral custodian of the world. Well, that's all true. But Sosa, and we know before Sosa, there is no doubt that the United States or any country can prosecute a pirate. You find a pirate, you hang him. That's the rule. So are you saying that it's only pirates? Because you said that there is no jurisdiction in international law. There's a principle of international law that says no jurisdiction unless there's some effect on the country that's doing the trial. But that isn't true of pirates, is it? And in Sosa, they list pirates. They list slavery, I think. Not sure, but Souter wrote it, and they certainly list torture. And so I think in reading Sosa, I have the impression, but I haven't read it in a while, I'll go back to it, but I have the impression that there are at least some things that country A can prosecute, even though country A has no connection but for the fact that the defendant happened to go to country A. That's certainly true of piracy, I'm certain of that. Most things I'm certain of I'm wrong about, but nonetheless, I'm not wrong about that one. And I think that Sosa listed a couple of others. Am I right or not? What do you think? Well, if I'm right, then the fact that if I am right, that's bad for you. Because if I am right, then the United States can, or we can say that international law does not forbid country X from prosecuting a torturer that they happened to find in country X, even though the torture itself had nothing to do with country X. So the distinction, I think, is that piracy was part of the core of the law of nations at the time the Constitution was enacted. So when Article I is put in place, Section 8, Blackstone's commentaries indicate that the United States is concerned with piracy, offenses against ambassadors, that was one of the core issues. And piracy, importantly, involves stateless vessels. Okay, so you're saying it's piracy, but nothing else. And so I want to be sure you're right. So I am going to look up whether international law says that country X can prosecute a person before it in X who is a pirate, but nobody else, unless there's a connection with the country. Now, what am I going to look up to find out that? Does a restatement say that? So the case that addresses the point that the Court's making is probably the 1980 case, Filategria and the Second Circuit dealing with the 18th. They overruled that in Kiobo, basically. Yes, because they made the argument that, in some sense, the Court is making, and the Court recognized this in its concurrence. That's the tort statute. That's the alien tort statute. I mean, think of the worst crime you can think of, but maybe there's some even worse and terrible, and it takes place abroad, and the person who did it is found in the United States. Probably that's why Sosa has the word torture in it. The issue, though, is, as the Court wrote in Kiobo, the issue is whether there's a distinct American issue involved. I might be wrong in remembering this, but I thought it was a question of whether Congress clearly wanted a prosecution, and it didn't clearly want a prosecution of something without a connection. I'm wrong. The appellant would argue, Your Honor, that it can't just be that Congress wants something. Congress can't want to regulate highway traffic. No, no, no. You're right. You're right. So the boundary is the law of nations, and the law of nations itself incorporates an understanding of international jurisdictional norms. Yes, and that means you can't prosecute anything but for pirates. Okay, and all I want is to see where it says that, and one obvious place is the restatement. Does it say that in the restatement? It does not say that in the restatement, but the issue is, does the law of nations, which limits the exercise of forced jurisdiction, permit jurisdiction over, and this is a civil action for tort, over claims between two foreign nationals for an act of... Yeah, that is the question. I have no doubt about that, and I'm just wondering. I know it's the case you can do it with a pirate, and I thought that Sosa said something about torture as well, so I thought maybe torture was another one where you could do it. Did you articulate that argument to the district court in a way such that the court understood it? I see a reference to it in the hearing on the motion to reconsider, and I see that, and that's all I see. There was a motion to dismiss, a motion to reconsider, a petition for interlocutory review, and an interlocutory appeal, or a motion for leave to file an interlocutory appeal before this court. So yes, the appellant believes that those issues were articulated to the court. Do you have sites to the record for that? I'll give you one. I think you referred to it at 171 in the appendix. I believe also that in a large part of the concentration of our argument before the district court at the inception was on the dissent by Justice Scalia in Hartford, and the premise that there were issues about the prescription on legislative jurisdiction as well, and that Congress itself was founded by the law of nations and those international jurisdictional norms. It just strikes me, because I think the district court responded by saying, well, I see these as another attempt at arguing for an extension of COIBO. When the answer, I think, the correct answer from you would have been, no, this is a different argument. It's simply about the power of whether Congress has the power to do this under the law of nations. The appellant believes that that argument was evident from his argument that this was an unconstitutional exercise of Congress' power under the TVPA. Let me ask you a different question, then. The appellate argues that, well, Congress both has the power to pass the TVPA under the offenses clause, which directly addresses your argument here, I think, or under the treaty power. Do you have any reply to the treaty power part of that argument? Yes, Your Honor. This isn't an action in which they seek to assert claims under a treaty power. This is a civil court action between parties seeking the recovery of monetary damages. This isn't a case about providing a safe haven for torturers. There's a separate immigration action against the appellant that's ongoing in which he's being prosecuted and presently incarcerated for immigration violations. This is a case about whether three foreign nationals can recover monetary damages against another foreign national for acts which took place in a foreign country. There's no distinct American interest. It does not touch a concern in the United States. It falls outside Congress' power to legislate under Article I, Section 8, and as such, the court does not have subject matter jurisdiction. For those reasons and those that we've argued in our papers, the appellant would ask the court to dismiss this matter or alternatively, for the reasons argued, remand it to the district court. Thank you. Good morning, Your Honors. May it please the Court, Diana Kim on behalf of Plaintiffs and Appellees. I'd like to start with a jurisdictional issue that my brother described as his primary issue. I heard him refer several times to Kiobel and the ATS. I want to clarify that the TVPA is not like the ATS because in the TVPA, Congress expressly created a federal cause of action for victims of torture and extrajudicial killing. Although the title of the Act says it is to provide a cause of action for the ATS, but go ahead. The language in the text, it was broader than merely the ATS. There are a series of questions, but go ahead. Yes, Your Honor. The language of the statute and in the express statements in the legislative history, Congress indicated that the TVPA would be broader than the ATS and that it would reach U.S. citizens and that it would reach torture and extrajudicial killing abroad. Every court of appeals that has considered whether the TVPA applies extraterritorially has held that it does, and this Court should do the same. I want to start by addressing Justice Breyer's questions at the end to my brother on the other side because the restatement of foreign relations does not say that it is limited to pirates. You are absolutely correct that it says that the law of nations recognizes that all countries can exercise universal jurisdiction over certain most serious, most heinous offenses that trigger universal concern regardless of where they occur. Piracy is sort of the original paradigmatic offense, but the question has been since then, who are today's pirates? And the Supreme Court answered that question as you quoted in Sosa. It said, torturers like pirates and slave traders before them have become enemies of all mankind. And I find that you have the site right there for the restatement. Save me a little time. The site for the restatement is in our, it is quoted in our brief. If I may, there are two restatement sections as of the time of the TVPA. Section 702, the draft restatement comment C, in general, individuals do not have direct international remedies against a state-violating law. There are human rights except where such remedies are provided by international agreement. And the signing statement attached to the Convention Against Torture, the conditions under which the Senate approved it, made it express that it was not to apply to the facts here. The other restatement section is 403. A state may not exercise jurisdiction to prescribe law with respect to the activities, relations, status, or interest of persons or things having connection with another state or states when such jurisdiction is unreasonable. It then goes on to say relevant factors are the extent to which the activity takes place within the regulating state, the connections between the regulating state and persons principally responsible for the activity to be regulated, the extent to which another state may have an interest in regulating the activity, and the likelihood of conflict with regulation by other states. So you could frame your argument in those terms, but most of the factors there counsel against recognition of this particular cause of action. It seems to me, accepting the district court's conclusion, there is no substantial relation to the U.S. The relation is that someone entered the U.S., he's now criminally charged with having illegally done so, misrepresenting whether he had ever been charged with any criminal offenses in Haiti. So the connection of the U.S. to this case is someone who entered illegally, who is alleged to have entered illegally, who is presently under criminal charges where the government will try to send him to prison and then deport him. Is there any other connection to the U.S.? I heard multiple questions in there, so I want to make sure I hit all of them. First, the restatement section that you quoted, I believe that that creates sort of the general rule for jurisdiction, but universal jurisdiction is a particular category. Which includes piracy, killing ambassadors, a few other things. But to date, there's no multilateral understanding that it includes torture committed in another country. I believe that's incorrect, Your Honor. The restatement of foreign relations, which we cite and quote in our brief, says that it specifically lists torture as an example of the kinds of crimes that are encompassed within universal jurisdiction. It lists things like torture, war crimes, genocide. And in addition to that, the Supreme Court, which is binding on this Court, in Sosa said, torturers like pirates and slave traders before them are enemies of all mankind, and that is the basis of universal jurisdiction. So to the extent that piracy can be prosecuted in any country, regardless of where it occurs, the Supreme Court has already recognized that torture is the equivalent of modern day piracy. I would also point you to the Convention Against Torture itself. I think you quoted something from the Department of Justice. No, no, I quoted the signing statement from the Senate as the condition under which the U.S. ratified the convention. The Department of Justice characterization of it is a separate matter, but it reports that the convention drafters specifically addressed, looked at the question of whether it should authorize a state to create a cause of action for actions in other countries with no connection to the home state, and concluded it should not do that because there was no multinational agreement on it. So I would point you to the text of the Convention Against Torture itself, Article 5, the second section of Article 5. So the first section talks about the torture that you're, I think that you're thinking of, torture that occurs within the country, but the second section of Article 5 of the convention says that countries should create ways to prosecute or extradite torturers that are found within their borders, and that section is not limited to torture that occurs within the borders. It's about torturers that are found within the borders, and let me just add that when the United States... If I could interrupt, too. Article 5, to me, seems to clearly be alluding to authorizing criminal jurisdiction over acts that occur abroad. Yes, that's true. That's true, but there's not a specific provision about jurisdiction for civil remedies, because civil remedies is covered by Article 14. But then shouldn't Article 14 have clear language if it's authorizing civil jurisdiction over acts that occur outside a country? I don't think Article 14 specifically refers to the jurisdiction question, and I would point out that the way the Committee Against Torture, which was created to sort of implement the Convention Against Torture, and the way other nations have understood the Convention Against Torture is that it does permit countries to reach torture abroad. Let me give you a couple examples, which can also be found in the amicus brief, the amicus briefs that were filed in this case. When the U.S. reported to the Committee Against Torture that it had passed the TVPA, the U.N. Committee Against Torture said that it welcomed the broad reach of the TVPA, including the fact, specifically including the fact that it applied to torture that occurred outside of the United States' borders. Yes, but the act itself gives as the example of extraterritoriality the killing or torture of U.S. citizens abroad. We don't have that here. When you say the act, are you referring to the TVPA or the Convention Against Torture? The TVPA. The text of the TVPA, though, clearly refers to torture committed abroad, and it permits claims by both aliens and U.S. citizens. Okay, but the legislative history talks about a specific extraterritorial application, which is U.S. citizens abroad. Your argument is different. You're saying that the broad language would encompass U.S. citizens abroad. You're saying that U.S. citizens abroad would be tortured by a non-citizen abroad of his fellow countrymen. Yes. Okay. And I would point you to the end. I think you're looking at one specific statement in the legislative history. There are other pieces of the legislative history that refer to providing a civil remedy in U.S. courts for torture abroad that are not specific to U.S. citizens. Okay. Judge Montecalvo referred to Article 14. Why doesn't the criminal prosecution and extradition back to the home country of the torturer or killer suffice to satisfy the even the larger language under Article 14? Because that's not how Congress chose to address the problem. Congress passed the TVPA to provide... But Article 14 specifically refers to only those two instances, and your argument is the text of the Act goes beyond that. My argument is that Congress had the authority under the offenses clause to implement the TVPA, I'm sorry, to implement the Convention Against Torture, and how Congress chose to do that was by passing the TVPA, which expressly provides a civil remedy in which it is permitted to do. There's not really... I don't believe that in the universal jurisdiction realm there's a difference between... If you can only have criminal universal jurisdiction and not civil universal jurisdiction, I believe Justice Breyer actually addressed that in one of his concurrences in Kiobel and Sosa, that universal jurisdiction includes universal civil jurisdiction. So Congress had the ability to choose to do what it did in the TVPA by providing a civil remedy. Can we move to attempted extrajudicial killing? There's an argument, I think a good argument, that the statutory language itself of the TVPA does not provide a cause of action for attempted extrajudicial killing. For instance, it uses the words killing and death as opposed to the torture cause of action. What's your strongest argument on this issue, that there is a cause of action for attempted extrajudicial killing? Our argument is based on the purpose and the express legislative history of the act. So we recognize that the text itself doesn't say the word attempt, but we think when the text is silent, that doesn't end the inquiry. The court then needs to apply the other ordinary tools of statutory interpretation. And here Congress said its purpose was to implement the Convention Against Torture, and that it had borrowed the definition of torture from the Convention Against Torture, and it had borrowed the definition of extrajudicial killing from the Geneva Conventions, and both of those conventions recognized liability for attempt. So when Congress incorporated those definitions, its intent was to also provide a remedy for attempted. And let me add that Congress quoted specifically from Article 4 in the Convention Against Torture, which includes the attempt language. I have some legislative history before me that says maybe it's the House report, in cases of extrajudicial killing the victim will not be alive to bring suit. That's part of the legislative record here as well, right? Yes, but that's describing the case of extrajudicial. So we're not saying that in a case of extrajudicial killing the person won't be alive. And I think in the statute it says killing because that's defining extrajudicial killing. We're not saying we're satisfying the definition of extrajudicial killing. We're saying that killing because of an attempt is an offense that is an inchoate offense that is lesser included within extrajudicial killing and doesn't have to be expressly stated in the statute. So in Title 18, for example, there's a special provision, there's a code provision that makes attempts to do any of the crimes in Title 18, but there's none in Title 28. And this is in Title 28, and the definition of extrajudicial killing is fairly broad. Anything that a judge doesn't really order is now an extrajudicial killing unless you get into some law of some other countries or something. Okay. Now, given the breadth of that and the absence of what we have in Title 18, do you think, and the fact that the State Department and the Justice Department both said don't even pass this law because it's too broad, and nothing says particularly, I don't think, in the legislative history about attempts, that better to read it not to include attempts where they don't really kill anybody? I don't think so, Your Honor, because there's no clear statement rule that you have to explicitly say attempt in order for there to be attempted liability. That's true, but there's a rule of lenity where this is incredibly broad. The rule of lenity applies to criminal cases, Your Honor, this is a civil case. And I just want to clarify that when you said that the legislative history doesn't expressly mention attempt, it does. Because Congress said it was applying the definition of torture from the Convention Against Torture, and then it quoted Article 4 of the Convention Against Torture, and Article 4 imposes liability for attempt to commit torture. And I just want to, I know I'm over time, but I would just like to respond to that. If so, why doesn't the text make that clear? Why isn't that a choice by Congress not to include attempts? I mean, that argument cuts both ways. Attempt is an inchoate offense, though, in the same way that solicitation and all the secondary forms of liability, Congress doesn't have to enumerate each. In the criminal code, there is a separate provision that addresses it, but that doesn't mean that Congress has to explicitly state it in each instance. That's true. What's actually bothering me in this is that there are X million Americans, as well as everybody else in the world, that travel to different countries. And a lot of them, say, policemen, for example, might do something that in some country the officials think, ah, this is really wrong. And attempt is so broad. And it carries with it conspiracy. It carries with it solicitation. And you have a broad definition of the killing itself. And now we have broad and broad and broad. And nothing really very explicit. That's what's bothering me. Attempt isn't just you do anything that could be any, it requires a substantial step. And I want to point out that we're not saying that there's a presumption that you would include attempt whenever the statute is silent. We're saying when the statute is silent, you don't presume that there's no attempt. When the statute is silent, you look at the other tools of statutory interpretation. And here Congress's purpose was to implement the Convention Against Torture, which recognizes attempt. So you would be undermining Congress's purpose by reading it so narrowly. I also want to be able to circle back to Judge Montecalvo's question, because we did provide two ways for the court to affirm. Well, I think that's what I want to ask you, which is, let's say we think we disagree with you on the attempt to extrajudicial killing. Does the damages award still stand in your opinion? Yes, Your Honor. Because as this court said in Malloy, when there is a single damages award for two claims that were both entered on the same underlying conduct and the same injury, the court can affirm if it upholds one of those claims. So here the torture and the attempted extrajudicial killing cover the same events. It was the beating of Juders and the attempted shooting of Juders. Sorry, the shooting and the attempted killing of Juders and Nisaj. And I think what my brother was saying was something along the lines of they were presented differently to the jury. That's not true, Your Honor. Torture covers the entire thing. The definition of torture is intentional affliction of severe physical or mental suffering. And that is true when you are beating someone as well as when you are shooting someone. So the same conduct underlies both claims. And what the court said in Malloy was if one of those claims would be sufficient to substantiate the damages claim, the court doesn't even need to consider the other claim. Why? I mean, you go to the jury and you say, you know, the defendant here went and really beat up and just about murdered the victim. And he tried to kill him. And he tried to kill him. And wouldn't you think the jury might think, and he tried to kill him. That's worse. And we ought to give a little bit of extra money for that. No, Your Honor. So because the let me let me let me give you the facts and the circumstances of Malloy and then and then show you why they're very similar to the facts and circumstances here. So in Malloy, there were there was one underlying conduct. The plaintiff sued for wrongful suspension. And but she brought two claims, an equal protection claim, which was based on discrimination for her gender and then a due process claim. The court upheld equal protection claim and then thought that the due process claim was harder and said, we don't need to decide the due process claim because the damages are for the same underlying conduct and would be the same for one of these claims or both of these claims because the jury was instructed, as it was here, not to enter duplicative damages. So in the context of this case, the torture covers all of the same conduct as the attempted extrajudicial killing, which means that the damages would be the same if there was just a torture claim. The damages would be the same if there was just an attempted extrajudicial killing claim or if there's both claims. So as long as the court can affirm the torture claim, which defendant has not challenged, the court doesn't need to reach the attempted extrajudicial killing claim. Unless the court has any other questions, if I can make one final point in closing, in response to Judge Lynch's question that I wasn't able to get to earlier, you asked, what does this case have to do with the United States? I think the defendant has referred numerous times to saying, like, this case has nothing to do with the United States. That's not true. Congress enacted the TVPA to ensure that the United States does not become a safe haven for torturers. That is exactly what defendant has done here. He avoided justice in Haiti by fleeing to Massachusetts. He's lived here for the last 14 years, working in this country, reaping all of the benefits of being here, and that was exactly what the TVPA was designed to do. Your time is up. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a two-minute rebuttal. May it please the court, Peter Haley for the appellant, John Valenia. The record in this case indicates that, indeed, the defendant returned to Haiti. He did not seek safe haven in the United States. These were acts that took place in April of 2007, June of 2008. He did not become a resident of the United States until July of 2008. He then returned to Haiti and to have his claims adjudicated against him in the courts of Haiti. The plaintiffs are unsatisfied with the quality of justice in Haiti or the amount of the damages that were entered, some three amounts, $17,000, $15,000, and $14,000. But in no sense did the defendant use the United States as a safe haven. And with respect to his immigration status, as the appellant has argued and the court has acknowledged, those issues are being adjudicated by the courts in the context of the immigration issues. With respect to SOSA and the arguments... Does that pending case have any effect on us or the decision we make here, in your opinion? No, other than with respect to the arguments that the court should be concerned with a safe haven or concerned with immigration issues, that the response should be that those issues are being appropriately dealt with in the context of the immigration action. In SOSA, the Supreme Court's 2004 decision, Mexican nationals abducted out of Mexico by federal agents brought to the United States. And then he brings this action. The observations that the court made in SOSA was that the law of nations has to do with rights between sovereign nations and not the rights between individuals. And it quoted from Blackstone's commentaries and also observed that it was important for the court to realize what the collateral consequences were of asserting civil jurisdiction over claims in a foreign country. In the sense that it would not want to be on the other side of that analysis, having courts in foreign countries asserting jurisdiction over claims that took place within the United States. And for those reasons, we would ask the court to dismiss this matter or otherwise remand. Thank you, Your Honors.